Judge Underwood
delivered the opinion of the Court.
Nicholas Chist, obtained a judgment against P. Briscoe, which he transferred to Brady, the plaintiff in error, who filed a bill against Robert P. Briscoe, son of P. Briscoe and others, alleging that two slaves, Dimbo and Peter, owned by P. Briscoe, had been fraudulently run off and secreted, to evade the payment of his debts, and that they were fraudulently held by the defendants. Robert P. Briscoe, in his answer, asserted title, as a bona fide purchaser from his father, for valuable consideration. The validity of his claim, is the only question presented by the record.
The debt for which judgment was recovered by Chist, against P. Briscoe, was contracted long before any sale was made, or attempted by P. Briscoe, to his son Robert, and the testimony abundantly proves the repeated declarations of P. Briscoe, that he would never pay the debt; and, also, that he was much embarassed. Tfiere is likewise much evidence, conducing strongly tp establish Robert’s inability to pay for the slaves. In 1819, or 20, a witness was requested as he testifies, to go to the house of P. Briscoe, and when there, the old gentleman Briscoe, called up six or seven negroes, ana called on the witness, to take notice, that he gave them up to his son Robert, also, a wagon and horses, for all which, he said, “he had received the money, and satisfaction.” There is nothing ip the testimony, shewing a delivery of the slaves in controversy, in the presence of any other witness at any other time. The witness who speaks pf this delivery, says he saw no money paid, and that *213 the property remained with P. Briscoe, as .it did before. Robert made his father’s house his home, about this time. Another witness proves, that Robert him, that he had to pay $¡2000 for his father, a part of which was unpaid, at the date of the conversation, and assigned that as a reason for not dividing the slaves, with his sisters, after his father’s death. A son-in-law of P. Briscoe, pro ves, that he declared^ thathebad given up every thing to Robert, and he was to support him, and settle up his business, and pay all just debts, and that Robert said, he was to arrange his father’s business, without setting out the terms of any contract, made between them. Another son-in-law of P. Briscoe, states, that the property was conveyed to Robert, to support his father, as long as he lived, and to pay his just debts. It is proved, that Robert P. Briscoe said, his father should not pay Chist’s debt. The witness is then asked, whether he did not hearP. Briscoe say, that Robert was to pay his debts? This question is answered in the affirmative. This testimony is not legitimate, because it was after P. Briscoe, had parted with his title. But if is immediately followed by a question and answer, on the part of the defendant, who enquires of the witness, whether P. Briscoe, did not tell the witness, that N. Chist’s debt was unjust, and he never would pay it, and whether he, the defendant, did not tell the witness, that he, the defendant, was not to pay this debt? All this is answered affirmatively, from which the inference is irresistable, owing to the manner, in which the question is asked, that Robert P. Briscoe, made some kind pf stipulation, to pay just debts, for the property which his father let him have.
Transfer by father, of all {^hisson^to payjustdebts, and to evade paJment°f is fraudulent,
The law does not authorize father and .son, to stipulate, which of the father’s debts shall he paid, as just, and which shall go unpaid, as unjust, and the transfer of all the father’s property to the son with a view to pay the just debts, and to evade the payment of the unjust debts. The judicial tripunáis of the country, must settle wqat debts a re just, and what unjust. An oppressed and defrauded individual, seldom appeals to them in vain, and it is the delight of the chancellor, to stay the hand of injustice, and to bind it fast forever. This is the citizen’s remedy, to avoid paying an unjust debt, and if he does not re *214 sort to it, his failure is a strong indication, that he distrusts his own cause. It will not do to permit man’s preponderating self interest, to decide which of his debts are just, and which unjust. Too many creditors under such a rule, when they could no longer procrastinate payment, would decide their debts to be unjust. Under the foregoing facts, we cannot hesitate to declare the contract, relative to the-slaves Dimbo and Peter, between P. Briscoe, and his son Robert, fraudulent in respect to the creditors of the former. Whatever may have been the secret motives of the parties, the law denominates their conduct fraudulent. There is nothing like that change, of possession, which usually accompanies a bona fide sale, and there can be no doubt of the intention of the parties, in respect to Chiát’s debt. See Goldsberry vs. May, I. Litt. 256, and authorities there cited, and Ward, &c. vs. Trotter, &c. III. Mon. 3.
The foregoing view of this case, is not affected by the consideration of Gerrard W. Briscoe’s testimony. Indeed there is good reason from his testimony, to adhere the more firmly, to the opinions already expressed.' He is the son of P. Briscoe, and brother of Robert. He makes the title of his brother Robert, to Dimbo and Peter, result from an exchange, made, by which P. Briscoe, lets Robert have Peter and Dimbo, and their mother, for a slave named Sam. Robert acquires title to Sam, from his father, in virtue of a contract, made between them, when Robert was under age, by which the father agrees to let Robert have Sam, if he, Robert, will continue to serve the father, and live with him. Some years afterwards, Gerrard sees Sam delivered to his brother Robert, but does not know, that the possession was ever changed, or rather, that Sam was ever removed from his fathers, until the old man Briscoe sold him.
It appears to us that Robert’s title to Sam, could not have prevailed against the claim of a creditor. We do not perceive the validity of the consideration, which Gerrard W. Briscoe sets out as passing from Robert to his father. It is not clear, whether the delivery of the negroes in 1819 or 20, as already mentioned, was before or subsequent to the *215 exchange of Sam for Dimbo and Peter, spoken of by Gerrard W. Briscoe. Be it before or after, we cannot perceive the necessity, on the, part of Robert, to different deliveries of the slaves to him. One bona jfidecontract and delivery,is enough. Gerrard W. Bris-coe speaks of money which Robert got in Virginia, but in such a confused manner, that it is entirely uncertain, whether the money was collected on account of Robert or his father. It appears from his deposition, that both were interested in an estate, or that both had claims in Virginia. Robert would, most probably, have shewn the extent of his interest there, and,how far his father had made collections for him. He got a negro called Nace, from his father, on this account. The darkness in which this part of the case is shrouded, certainly furnishes us no ground for favourable inferences in behalf of the appellee.
It is, perhaps more common for relations, owing to their mutually subsisting confidence, to transact business loosely with each other, .than with those, who are notendearedto them by the ties of consanguinity. This, on many occasions, may furnish an apology for not being able to present transactions among the members of a family, in that clear and satisfactory light, which is desirable to the judge, when he has to investigate them. It could not have been concealed from Robert Briscoe, that his father was greatly embarrassed, if not insolvent. This he must have known when he was endeavoring to acquire title to the whole of his father’s property. He should have recollected, that those sentiments of affection, which generate the confidence alluded to, do too often prompt relatives to provide for each other, at the expense of just creditors; and therefore, the world is apt to view with suspicion, family arrangements, when a son gets the property, and the father’s debts go unpaid. These reflections should have induced him to have acted with the utmost circumspection; and he should have been able in his answer and his proofs, to have shewn minutely, the manner in which he acquired a fair title, upon valuable consideration.
It is our opinion, that the circuit court should have subjceted the negroes, Dimbo and Peter, to the payment of the appellant’s debt.
Denny, for plaintiff; Hardin, for defendant.
Wherefore, the decree of the circuit Court, dismissing the bill, with costs, is reversed, and set aside, and the cause remanded, for a decree to be entered ill conformity to this opinion.
The appellant must recover his costs.